UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHYLLIS HAMEL STROBEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-30074-KAR |
| ) | |
| WESTFIELD STATE UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 7)

ROBERTSON, U.S.M.J.

I.   INTRODUCTION

Plaintiff Phyllis Hamel Strobel ("Plaintiff") has filed suit seeking damages from her employer, Westfield State University ("Defendant"). Plaintiff alleges that she was subjected to a hostile work environment and that Defendant violated Mass. Gen. Laws ch. 151B, § 4 (Count I) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Count II) by failing to respond promptly and appropriately to her complaint about sexual harassment by a co-worker. Now pending before the court is Defendant's motion to dismiss (Dkt. No. 7). The parties have consented to this court's jurisdiction (Dkt. No. 14). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons set forth below, the courts DENIES Defendant's motion.

II.   ALLEGATIONS IN COMPLAINT

Because the court is ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the facts are recited in the light most favorable to Plaintiff, the non-moving party. *See Gargano v. Liberty Int'l Underwriters, Inc.,* 527 F.3d 45, 48 (1st Cir. 2009) (citing *Fitzgerald v. Harris,* 549 F.3d 46, 52 (1st Cir. 2008)). Plaintiff was employed by Defendant as a maintainer for sixteen

1

years (Compl., ¶¶ 3, 4).  On July 9, 2018, a female co-worker grabbed Plaintiff's buttocks "in a sexual manner" (Compl. ¶ 5).  About eleven days later, the same employee again grabbed Plaintiff's buttocks "in a sexual manner" (Compl. ¶ 6).  On August 3, 2018, Plaintiff filed a "Title IX Complaint Form" with Defendant (Compl. ¶ 7).  At some point, Plaintiff learned that the same employee had previously grabbed another employee's breast.  She alleges, on information and belief, that Defendant was aware of the prior incident (Compl. ¶¶ 8-9).

Plaintiff alleges that Defendant failed to remedy the situation, provide support to her, or notify her of the status of the investigation (Compl. ¶ 10).  Plaintiff further alleges that her concern about a repeat of the incident affected her mental health, causing her to become withdrawn and putting a strain on her relationship with her husband and other family members (Compl. ¶¶ 11-13).  When Plaintiff contracted pneumonia, her doctor agreed that stress and anxiety had adversely affected her immune system and led to her illness and her elevated blood pressure (Compl. ¶ 14).

After several months of silence and apparent inaction, Plaintiff hired counsel who contacted Defendant's Vice President of Human Resources to inquire about the status of Plaintiff's complaint (Compl. ¶ 15).  On March 18, 2019, seven months after Plaintiff filed her complaint, she received a letter from Defendant admitting that a violation had occurred (Compl. ¶ 16).  However, Defendant did not inform Plaintiff of any remedial action it had taken or would take in the future (Compl. ¶ 16).  Two days later, Defendant notified Plaintiff that the perpetrator was given a minimal suspension and required to participate in a discrimination and harassment prevention training program (Compl. ¶ 17).  Plaintiff's counsel filed an appeal based on Defendant's delay in conducting the investigation and "the lack of resolve in the consequences of the perpetrator" (Compl. ¶ 18).  Defendant stood by its initial decision (Compl. ¶ 19).

Plaintiff's complaint, filed on June 22, 2021, asserts a violation of Mass. Gen. Laws ch. 151B, § 4 (Count I); and a violation of Title VII of the Civil Rights Act of 1964 (Count II). Defendant has moved to dismiss Count I pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss Count II pursuant to and Fed. R. Civ. P. 12(b)(6) (Dkt. Nos. 7, 8). Plaintiff agreed to dismiss Count I – which, accordingly, is not addressed herein – and opposes Defendant's motion to dismiss Count II (Dkt. No. 19).

### III.  STANDARD OF REVIEW

"A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim." *Ngomba v. Olee*, CIVIL ACTION NO. 18-11352-MPK, 2020 WL 107969, at *2 (D. Mass. Jan. 9, 2020). In ruling on the motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.,* 919 F.3d 121,127 (1st Cir. 2019) (citing *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). "In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Ngomba*, 2020 WL 107969, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Although evaluating the plausibility of a legal claim 'requires the reviewing court to draw on its judicial experience and common sense,' *Iqbal*, 556 U.S. at 679, the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Twombly*, 550 U.S. at 556). However, "labels and [legal] conclusions, and a formulaic recitation of the elements of a

3

cause of action . . ." are insufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Nevertheless, 'some latitude' may be appropriate where a plausible claim may be indicated 'based on what is known,' at least where, as here, 'some of the information needed may be in the control of the [the] defendants.'" *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (quoting *Pruell v. Caritas Christi*, 676 F.3d 10, 15 (1st Cir.), *cert. denied*, 132 S.Ct. 1969 (2012) (remanding a case for factual development where the district court dismissed the case pursuant to Rule 12(b)(6), disregarding an allegation that was made on information and belief)); *see also Saldivar v. Racine*, 818 F.3d 14, 23 (1st Cir. 2016) (emphasizing that some latitude is appropriate where an allegation is made on information and belief and a modest amount of discovery may provide the missing link). "Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief." *Ngomba*, 2020 WL 107969, at *2 (citing *Iqbal*, 556 U.S. at 679).

IV.     ANALYSIS

Plaintiff alleges that she was subjected to a hostile work environment and that Defendant failed to respond with prompt and appropriate remedial measures (Compl. ¶ 25). Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), prohibits employers from discriminating against employees on the basis of sex. *See* 42 U.S.C. § 2000e-2(a). "Under Title VII, there is no liability for individual employees who engage in discriminatory conduct but rather there is only liability for the employer itself." *Posada v. ACP Facility Servs., Inc.*, 389 F. Supp. 3d 149, 156 (D. Mass. 2019) (citing *Fantini v. Salem State Coll.*, 557 F.3d 22, 30-31 (1st Cir. 2009)).

An employer may violate Title VII if harassment creates a hostile or abusive work environment for an employee. *See Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). To prevail in a Title VII hostile work environment claim, a plaintiff must establish that:

>   (1) she is a member of a protected class;
>
>   (2) she was subjected to unwelcome sexual harassment;
>
>   (3) the harassment was based on sex;
>
>   (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment;
>
>   (5) the sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and
>
>   (6) some basis for employer liability has been established.

*Thirkield v. Neary & Hunter OB/GYN, LLC*, 76 F. Supp. 3d 339, 345 (D. Mass. 2015) (citing *Ponte v. Steelcase Inc.*, 741 F.3d 310, 319-20 (1st Cir. 2014)).

The fourth and sixth elements are at issue here. Defendant contends that dismissal of Count II is required because the facts alleged are not sufficient to establish that the harassment was severe or pervasive, and, even if the alleged harassment was severe and pervasive, there is no basis for employer liability because Defendant responded to Plaintiff's complaint, investigated it, and took remedial measures (Dkt. No. 8 at 7-9). The court finds that Plaintiff's allegations are sufficient to state a claim.

>   A. The alleged harassment was sufficiently severe and pervasive that it altered the conditions of Plaintiff's employment and created an abusive work environment.

Defendant asserts that the two incidents about which Plaintiff complains were not so severe or pervasive as to alter the conditions of Plaintiff's employment (Dkt. No. 8 at 7). Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986) (internal brackets and quotation

marks omitted)). There is no "mathematically precise test" that is employed to determine whether a workplace is hostile or abusive, *see Gerald v. Univ. of P.R.,* 707 F.3d 7, 18 (1st Cir. 2013), but the following factors are considered: the frequency and severity of the discriminatory conduct; whether it was physically threatening or humiliating, or merely an offensive utterance; and "whether it unreasonably interfere[d] with an employee's work performance." *Harris,* 510 U.S. at 23. A plaintiff need only show that the alleged discriminatory conduct was severe or that it was pervasive. *See Roy v. Correct Care Sols., LLC*, 914 F.3d 52, 64 (1st Cir. 2019) (citing *Burns v. Johnson*, 829 F.3d 1, 18 (1st Cir. 2016)).

"A 'single act of harassment may, if egregious enough, suffice to evince a hostile work environment.'" *Gerald*, 707 F.3d at 18 (quoting *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005)). Plaintiff's allegation that a fellow employee grabbed her buttocks, an intimate part of her body, "in a sexual manner" twice within less than two weeks can reasonably be viewed as severe sexual harassment (Dkt. No. 1 ¶¶ 5, 6). *Id*. *See* also *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 692 (7th Cir. 2010) ("a single act can create a hostile environment if it is severe enough, and instances of uninvited physical contact with an intimate part of the body are among the most severe types of sexual harassment") (citations omitted); *Acevedo-Torres v. Municipality of Arecibo*, 857 F. Supp. 2d 231, 235 (D.P.R. 2012) (the court denied a motion to dismiss where the plaintiff alleged that a co-worker "showed up at her assigned post, whipped out his penis, asked if he could masturbate in front of her and asked whether she thought his penis was big"). Plaintiff knew that the co-worker who grabbed her buttocks had previously grabbed another employee's breasts (Dkt. No. 1 ¶ 8). "Plaintiff's awareness that [the co-worker] had performed similar lewd conduct … is relevant to Plaintiff's reasonable perception of a hostile work environment." *Acevedo-Torres*, 857 F. Supp. 2d at 235.

As to the subjective component of the inquiry, according to Plaintiff, she promptly complained about the misconduct, and, as Defendant apparently ignored her complaint, lived with constant fear when she was at work that the incident would be repeated (Compl. ¶ 11). Her distress caused her to become moody and withdrawn, and the changes in her personality took a toll on her family relationships and her health.

The allegations in the complaint are similar to those in other cases in which the courts have found the allegations of harassment sufficient to survive motions to dismiss or for summary judgment. In the *Thirkield* case, the plaintiff asserted that, on separate occasions within a short period of time, a female co-worker grabbed her breasts twice and grabbed her buttocks and winked at her. *See* 76 F. Supp. 3d at 342. In denying summary judgment, the court found that those incidents, in combination with the plaintiff's evidence that another employee reported that she was also the target of the harasser's inappropriate conduct, could result in a reasonable factfinder concluding that the harassment was severe. *Id.* at 342, 346. Similarly, in *Lightbody v. Wal-Mart Stores E., L.P.*, Civil Action No. 13-10984-DJC, 2014 WL 5313873, at *1 (D. Mass. Oct. 17, 2014), the plaintiff alleged that another employee's inappropriate behavior included telling her four times that "she was 'hot'" and once that "she 'excite[d] him,'" pinching her stomach twice, trying to pinch her buttocks, and telling the plaintiff and others that he planned to sit on his couch naked all weekend. *Id.* at *1 (state law hostile work environment claim brought under Mass. Gen. Laws ch. 151B).[1] In response to Wal-Mart's argument that the harassment was

---

[1] "[T]he analysis of sexual harassment claims under 151B is essentially analogous to those under Title VII, and the [Massachusetts Supreme Judicial Court] has stated it is their practice 'to apply Federal case law construing the Federal anti-discrimination statutes in interpreting [Mass. Gen. Laws] [c]h. 151B.'" *Thirkield,* 76 F. Supp. 3d at 349 (quoting *Wheatley v. Am. Tel. & Tel. Co.,* 636 N.E.2d 265, 268 (Mass. 1994)); *see also Brissette v. Franklin Cty. Sheriff's Office*, 235 F. Supp. 2d 63, 85 (D. Mass. 2003) ("The approach taken by the Supreme Judicial Court to 'hostile environment' claims brought under the state statute does not differ greatly from the Supreme

not so severe and pervasive as to constitute sexual harassment, the court took particular note of "the unwelcome touching," and characterized it as "physically threatening and humiliating." *Id.* at \*4. Taking into account the harassing conduct and the plaintiff's reaction of "severe emotional distress, including heart palpitations, sleeplessness, bouts of crying, shaking, muscle tension, …, depression, hopelessness, doubts about her self- worth and short-tempered treatment of family and friends," the court held that whether the alleged inappropriate conduct was "sufficiently severe and pervasive to interfere with a reasonable person's job performance" was a question of material fact for a jury. *Id. See also Acevedo-Torres*, 857 F. Supp. 2d at 235.

      The case upon which Defendant relies, *Ponte,* 741 F.3d at 310, is distinguishable. In *Ponte*, the plaintiff also alleged two instances of unwanted touching. The first occurred when the plaintiff's supervisor insisted on driving her back to her hotel from a work function. *See id.* at 314. During the drive, the plaintiff's supervisor reached his arm around her and put his hand on her shoulder for about a minute. *See id.* On the second occasion, the supervisor again insisted on driving the plaintiff back to her hotel and, again, placed his hand on her shoulder "for the majority of the fifteen to twenty-minute drive." *Id.* The court found that these two incidents of shoulder touching were not sufficiently severe or pervasive to be termed sexual harassment or to have caused an abusive work environment. *Id.* at 320-21. In contrast, here, Plaintiff alleged that Defendant's employee grabbed her buttocks twice "in a sexual manner" (Dkt. No. 1 ¶¶ 5, 6). Because, unlike a shoulder, the buttocks are considered an intimate part of the body, a reasonable

---

Court's analysis.").

factfinder could conclude that the two times the alleged harasser grabbed Plaintiff's buttocks without being invited to do so amounted to a severe infringement on her bodily integrity.

Considering the totality of the circumstances alleged – the unwanted grabbing, the incident involving another employee, and the psychological and physical manifestations of the stress – a factfinder could conclude that the harassment Plaintiff alleges she experienced was sufficiently severe to create a hostile work environment.

B.  The allegations sufficiently establish a basis for employer liability

As to Defendant's denial of liability, "[w]hen coworkers, rather than supervisors, are responsible for the creation and perpetuation of a hostile work environment . . . an employer can only be liable if the harassment is causally connected to some negligence on the employer's part." *Noviello*, 398 F.3d at 95.  "Typically, this involves a showing that the employer knew or should have known about the harassment, yet failed to take prompt action to stop it." *Id.* "'In determining whether the employer failed to take "prompt and effective remedial action to end the harassment," [the court] consider[s] "the amount of time between notice of the harassment and any remedial action, the options available to the employer such as employee training sessions and disciplinary action taken against the harassers, and whether or not the measures ended the harassment."'" *Jenkins v. Winter*, 540 F.3d 742, 749 (8th Cir. 2008) (second alteration in original) (quoting *Arraleh v. Cty. of Ramsey,* 461 F.3d 967, 979 (8th Cir. 2006)).

Plaintiff has established a sufficient factual basis for Defendant's liability.  "'[W]here an employer has a complaint procedure delineating the individuals to whom notice of harassment must be given,' actual notice is established when the employee notifies those individuals." *Id.* (quoting *Weger v. City of Ladue*, 500 F.3d 710, 721 (8th Cir. 2007)).  Plaintiff gave Defendant

actual and prompt notice of the harassment by filing the Title IX Complaint Form two weeks after the employee grabbed her buttocks the second time (Dkt. No. 1 ¶¶ 6, 7).

Plaintiff alleges that, so far as she was aware, Defendant took no action to address her alleged harasser's conduct until her attorney contacted Defendant some seven months after she filed her internal complaint (Compl. ¶ 10, 15-16).  *See Noviello,* 398 F.3d at 95.  Even then, Defendant allegedly failed to disclose the remedial action it took or the steps it would take to prevent a recurrence of the employee's harassment of Plaintiff (Dkt. No. 1 ¶ 16).  Defendant later notified Plaintiff that the perpetrator had been given a "minimal suspension" and was required to attend a Discrimination and Harassment Prevention training program (Dkt. No. 1 ¶ 17). Although the adequacy of Defendant's remedy presents a factual question, *see Toussaint v. Brigham & Women's Hosp., Inc.,* 166 F. Supp. 3d 110, 117 (D. Mass. 2015), when viewed under the plaintiff-favorable standard applicable at this stage of the litigation, the complaint is sufficient to show that Defendant was negligent for failing to respond to Plaintiff's complaint for seven months.  *See Smith v. St. Louis University,* 109 F.3d 1261, 1265 (8th Cir. 1997), *abrogated on other grounds by Torgerson v. City of Rochester,* 109 F.3d 1261 (8th Cir. 1997) (denying summary judgment where the employer took four months to respond to the plaintiff's initial complaints and seven months from the time the plaintiff detailed her complaints); *Sauer v. Belfor USA Grp., Inc.*, 205 F. Supp. 3d 209, 212, 218 (D. Mass. 2016) (the employer's two month delay in responding to the plaintiff's complaint was deemed sufficient to state a plausible claim for relief under Mass. Gen. Laws ch. 151B, § 4); *Rosario-Méndez v. Hewlett Packard Caribe BV,* 638 F. Supp. 2d 205, 228 (D.P.R. 2009) (where the plaintiff's employer took months to respond, a jury could reasonably find that the employer "failed to effectively act promptly in reaction to [her] sexual harassment complaint"); *Moore v. Austin Bank of Chicago*, No. 07 C 481, 2009 WL

393866, at *6 (N.D. Ill. Feb. 10, 2009) ("A complete failure to respond to Moore's complaints for almost four months simply cannot be interpreted as being 'reasonably calculated to prevent further harassment.'") (citation omitted).  *Compare Noviello*, 398 F.3d at 97 (finding that the employer was not negligent where it began investigating the alleged sexual harassment within seven days of the date the plaintiff served notice and the supervisor was immediately suspended).

Furthermore, Plaintiff alleged, albeit on information and belief, that Defendant knew that the co-worker who assaulted her had previously assaulted another employee (Compl. ¶ 9). Defendant's delay in responding to Plaintiff's complaint, which suggests a reluctance to address a problem in the workplace, lends some credence to Plaintiff's belief that Defendant was on notice of the risk to co-workers posed by her assailant and failed to take appropriate remedial measures when first notified about employee misconduct.  *See Acevedo-Torres*, 857 F. Supp. 2d at 235-36 (where the complaint alleged that the harasser had previously engaged in sexually harassing behavior with other employees that was similar to the conduct in which he engaged vis-à-vis the plaintiff, the complaint alleged a basis for employer liability).

In view of the considerable amount of time that passed between Plaintiff's notice of sexual harassment and Defendant's response and the allegation of prior knowledge, Plaintiff has pled sufficient facts to survive a motion to dismiss.  *See id.*

V. CONCLUSION

For the foregoing reasons, Defendant Westfield State University's motion to dismiss (Dkt. No. 7) is denied.  The clerk is directed to schedule a Fed. R. Civ. P. 16(a) and (b) conference.

It is so ordered.

August 9, 2022                                              /s/ Katherine A. Robertson
                                                                         KATHERINE A. ROBERTSON

                                                         United States Magistrate Judge